**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MICHAEL GREENE,

                          Plaintiff,

      **-** against -

NETSMART TECHNOLOGIES, INC.,

                        Defendant.
----------------------------------------------------------X

                          **REPORT AND**
                          **RECOMMENDATION**

                        CV 08-4971 (TCP) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      Plaintiff Michael Greene ("Greene" or "Plaintiff") brings this action against Netsmart

Technologies, Inc. ("Netsmart" or "Defendant") alleging violations of Title VII of the Civil

Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17.  Plaintiff maintains that he was

discriminated against on the basis of race/color and subsequently subjected to retaliation based

upon his complaints of discrimination.  Defendants have moved pursuant to Rules 37(b) and

41(b) of the Federal Rules of Civil Procedure and the inherent powers of this Court to dismiss

this action and/or for sanctions and costs.  Judge Platt has referred this matter to me for a Report

and Recommendation.  Oral argument of the motion was thereafter scheduled and completed.

DE 68.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

      Plaintiff initiated this action on December 11, 2008 and subsequently filed an Amended

Complaint on February 27, 2009.  DE 6.  At the time of the filing of the Complaint, Plaintiff was

still employed by Defendant.  Subsequently, however, Plaintiff's employment was terminated.

At some time prior to the filing of this action, Plaintiff began secretly recording conversations he

had with co-workers in the workplace.  He also took handwritten notes of happenings in the

workplace. These audio recordings and handwritten notes, and their alleged destruction and/or lack of production, form the basis of Defendant's charges of misconduct and are, in large part, the subject of this motion.

The parties appeared before this Court for a Rule 26(f) discovery conference on May 8, 2009, at which time they were directed to exchange Rule 26(a) disclosures by May 12, 2009. DE 16. Plaintiff's Rule 26(a) disclosures were served on May 12, 2009 and stated that "all relevant documents in the plaintiff's possession will be provided under separate cover," including "miscellaneous correspondence and documentation." DE 52, Exh. 8 at 2. The disclosure also stated that "any and all tape recorded statements will be produced under separate cover." *Id.* at 3. By letter dated May 14, 2009, counsel for Defendant objected to certain aspects of Plaintiff's Rule 26(a) disclosures and stated that "we request that all recordings in Plaintiff's possession remain intact in their original form so that they may be properly analyzed by an expert in order to determine authenticity. To that end, we would like to arrange for any recordings to be inspected as soon as possible." DE 52, Exh. 22 at 1. On June 11, 2009, Defendant's counsel sent a second letter to Plaintiff's counsel memorializing a conversation between counsel on June 10, 2009 and stating that Defendant's counsel had not received copies of the tape recordings and had not yet been permitted to inspect the recordings. DE 52, Exh. 23 at 1. In that letter, Defendant's counsel reiterated his request that all original recordings be preserved. Plaintiff produced a compact disc "containing several recordings" on June 12, 2009. DE 28 at 1.[1]

---

[1]     On June 22, 2009, Plaintiff supplemented his Rule 26(a) disclosure and stated, *inter alia*, that "copies of any and all tape recorded statements have been produced under separate cover." DE 52, Exh. 10 at 5.

Defendant's counsel served a first request for the production of documents on June 15, 2009, in which he requested, *inter alia*, information regarding any document that had been lost or destroyed. DE 52, Exh. 20. On August 4, 2009, Plaintiff served his responses to Defendant's first request for the production of documents. DE 52, Exh. 11. In response to Defendant's request for "all storage device(s), computer(s) or recorder(s) used to maintain or store any tape of electronic recordings requested," Plaintiff stated that "the original recordings and recorder will be made available for inspection upon request." DE 52, Exh. 11 at 5-6. The responses made no mention of any documents that had been lost or destroyed. On August 25, 2009, Plaintiff's counsel e-mailed an additional recording to Defendant's counsel stating that the recording "was located by my client and turned over to me yesterday." DE 52, Exh. 24.

The parties agreed that an inspection of Plaintiff's recording device, computer hard-drive, and external hard-drive would take place at Plaintiff's home by an independent vendor on August 27, 2009. However, once Plaintiff learned that the vendor intended to take an "image" of each entire hard-drive and analyze it at the vendor's facilities, Plaintiff was concerned about the release of other private, confidential information on the hard-drives and refused to allow the inspection. Plaintiff immediately called his attorney. DE 28; DE 52, Exh. 24. After an e-mail exchange between counsel, the parties filed a joint motion to this Court seeking assistance in resolving the conflict. DE 28. Defendant stated that taking an image of the entire hard-drive was the only way to accomplish the inspection, while Plaintiff objected that it would give Defendant access to a breadth of irrelevant, private, and possibly privileged, information. This Court held a telephone conference on September 3, 2009 to resolve the dispute, at which time I denied Defendant's request to take a mirror image of the computer hard-drive. DE 29. I instructed the

parties to find a more narrowly tailored manner in which to obtain the information needed.

However, I informed Defendants that they were free to renew their motion if they were able to

find case law supporting their position. *Id.* No subsequent motion was filed.

The parties ultimately agreed that a vendor selected by Plaintiff, P.C. dot COM, Inc.

("PCdotCom"), would take an image of the hard-drives and perform the inspection of both the

hard-drives and the recording device. However, Plaintiff's counsel would review any documents

for privilege before they were produced to Defendant. PCdotCom issued a thorough report to

Plaintiff's counsel on October 26, 2009 detailing the process and results of the inspection

performed. DE 52, Exh. 13. Plaintiff's counsel forwarded the report to Defendant's counsel that

same day. DE 53 at 15. In relevant part, the report stated that:

- The laptop contained no audio files recorded by Plaintiff, and "no evidence was found of data having been tampered with or otherwise modified/changed." DE 52, Exh. 13 at 3.

- Several audio files were found on the external hard-drive that had been recorded by Plaintiff. The report states that "these digitally recorded audio files are authentic and have not been tampered with or otherwise altered." *Id.*

- The digital recording device contained no files. Plaintiff informed the PCdotCom technician that he had deleted the files. PCdotCom attempted to restore the files, but was unsuccessful. *Id*. at 3-4.

Accompanying the PcdotCom report were copies of the digital recordings retrieved and a

schedule of all file-names contained on the hard-drives.

Plaintiff's deposition was held on November 19, 2009. During the deposition,

Defendant's counsel questioned Plaintiff regarding his document and audio recording retention

practices. Defendant's counsel also questioned Plaintiff regarding the schedule of file-names

recovered by PCdotCom. In reviewing the schedule of file names from PCdotCom, Plaintiff

identified certain documents related to the case that may not have been produced to his counsel for review. *Id.* at 250-63. Plaintiff also identified certain documents on the PCdotCom schedule that he had created as part of his employment at Netsmart, but had retained a copy of on his personal computer. *Id.* at 263-64. Plaintiff also testified that he had taken handwritten notes which he no longer possessed and may have destroyed, but which formed the basis for other documents that had been produced, including a time-line. DE 52, Exh. 14 at 34-39. Finally, Plaintiff brought certain documents with him to his deposition that had not previously been produced. *Id.* at 265. Defendant's counsel requested that any withheld documents be produced immediately. Plaintiff's counsel responded that he would look into the issue and would produce any additional documents.

Defendant's counsel memorialized his request for the previously unproduced documents in a letter to Plaintiff's counsel on November 25, 2009, and requested that the documents be produced within a week since discovery was scheduled to close on December 18, 2009. DE 52, Exh. 15. Defendant's counsel further requested that a third-party vendor remove all Netsmart proprietary material from Plaintiff's computer and external hard-drive. On December 8, 2009, having not received a response from Plaintiff's counsel, Defendant served a third-party subpoena on PCdotCom for particular documents contained on Plaintiff's hard-drive that were listed on the schedule prepared by PCdotCom. DE 52, Exh. 16. On December 14, 2009, the parties conferred and, as memorialized in an e-mail by Plaintiff's counsel to Defendant's counsel, the parties agreed that Plaintiff's counsel would serve the documents and Defendant's counsel "would review that information and follow up with me to whether this satisfied your request, but that in any event, you did not expect PCdotcom to provide you with the information requested by

subpoena." DE 52, Exh. 15 at 16. Plaintiff's counsel produced the documents to Defendant's

counsel on December 15, 2009.[2]

On December 16, 2009, Defendant's counsel e-mailed Plaintiff's counsel requesting that

he identify the location of eleven documents within the production made on December 15, 2009.

DE 52, Exh. 15 at 18-19. On December 31, 2009, after two weeks without hearing back from

Plaintiff's counsel, Defendant's counsel sent an e-mail to Plaintiff's counsel stating that he would

be enforcing the subpoena on PCdotCom in order to obtain the eleven unlocated documents. *Id.*

at 18. Simultaneously, Defendant's counsel e-mailed PCdotCom and requested the eleven

documents be sent to him pursuant to the subpoena. *Id.* at 25. On January 4, 2010, the parties

agreed through a series of e-mails that PCdotCom would produce the eleven documents to

Plaintiff's counsel, who would review them for privilege. Once the documents were determined

to be non-privileged, Plaintiff's counsel would authorize PCdotCom to produce them to

Defendant's counsel. The eleven documents were ultimately delivered to Defendant's counsel

on January 5, 2010 by PCdotCom. DE 52, Exh. 18.

Defendants served the motion to dismiss and/or for sanctions on January 8, 2010. On that

same day, Defendants served a summary judgment motion on Plaintiff. The summary judgment

motion was later withdrawn as a result of this Court's Order allowing amendment of the

Complaint, and in light of the pending motion for reconsideration of that Order. DE 61, 62.

---

[2]     At oral argument, Plaintiff's counsel stated that Plaintiff was deposed for a second time at
some point in December 2009, at which time Defendant's counsel had an opportunity to further
question Plaintiff on his document production. It is unclear whether this second deposition
occurred before or after Plaintiff's subsequent document production and thus whether
Defendant's counsel had an opportunity to question Plaintiff on the subsequently produced
documents.

On January 8, 2010, the same day Defendant's summary judgment brief was due, Plaintiff produced additional documents to Defendant that Plaintiff's counsel stated had "recently been located by Mr. Greene." DE 56, Exh. 28 at 1.

## II.   THE PARTIES' CONTENTIONS

Defendant's allegations of misconduct arise chiefly from the following actions: (1) Plaintiff's destruction of handwritten notes; (2) Plaintiff's failure to produce all relevant non-privileged files; (3) Plaintiff's deletion of audio recordings from the recording device; and (4) Plaintiff's retention and deletion of Netsmart proprietary information.[3]

### A.   Destruction of Handwritten Notes

As noted above, during his deposition, Plaintiff testified that he had taken handwritten notes of events in his workplace, which he may have subsequently destroyed. In his affidavit,

---

[3]    In addition to these allegations, Defendant argues that Plaintiff acted in bad faith by "knowingly filing false and frivolous complaints." DE 53 at 11. This contention arises from Plaintiff's inclusion of state law claims in his Complaint – claims which had been the subject of administrative complaints with the New York State Division of Human Rights. As such, Defendant argues this Court had no subject matter jurisdiction over these claims. The matter is a moot point since Plaintiff voluntarily withdrew the state law claims on February 27, 2009. DE 11. Additionally, Defendant claims Plaintiff acted in bad faith by including three factual allegations in the Complaint that he later stated were incorrect. Plaintiff has submitted an affidavit stating that he believed these three statements were correct at the time of filing the Complaint and only upon further reflection realized their inaccuracy. Furthermore, Plaintiff states the mistakes were an oversight and not made in bad faith. DE 54, ¶ 9.
    Notwithstanding these assertions, allegations regarding a false or frivolous complaint are not properly remedied by Rule 41(b) or Rule 37(b), under which the Defendants have moved for relief and the particulars of which are discussed *infra*. Instead, such misconduct would properly be addressed by Rule 11, which requires that a motion for sanctions thereunder "must be made separately from any other motion . . ." Fed. R. Civ. P. 11(c)(2). As such, this Court does not find these allegations to be relevant to its consideration of sanctions under Rule 41(b) and Rule 37(b). Furthermore, the Court does not find that the conduct of Plaintiff in this regard rises to the level of perpetration of a fraud upon the Court and I decline to exercise inherent powers to sanction this conduct at this time.

Plaintiff states that "prior to retaining counsel or bringing this action, I drafted timelines, and would occasionally transfer information that I wrote in notes onto my timeline that I had on my computer. After I put this information into my timeline, I would throw out the note. . ." DE 54 ¶ 14. Multiple typed versions of this timeline were produced to Defendant.

Defendant contends that these original notes "would have provided a unique view of whether or not Plaintiff observed or witnessed any facts or events during this period that would support his claims." DE 53 at 17. As such, Defendant seeks sanctions based on the destruction of the handwritten notes.

### B.      Withholding Discoverable Information

As noted above, certain documents were not produced to Defendants until their existence was disclosed at Plaintiff's deposition and/or through examination of the PCdotCom report. Defendant alleges that Plaintiff "intentionally concealed discoverable information" after repeatedly representing that all documents had been produced. DE 53 at 18-20.

Plaintiff responds by stating that all documents have now been produced, which Defendant does not dispute. In his affidavit, Plaintiff states that he never intentionally withheld documents and produced all relevant documents he found on his computer. DE 54, ¶ 4. He states that the documents were "not turned over because I either did not know [they] existed or did not think [they were] relevant." *Id.* at ¶ 5. As to the un-produced document he brought to his deposition, Plaintiff states that he "did not think I would need to turn over an additional version of my timeline when I had previously turned over my timeline." *Id.* at ¶ 13.

## C.     Deletion of Audio Recordings

Defendant objects to the fact that Plaintiff deleted recordings from his digital recording device.  In his affidavit, Plaintiff states that he "would tape conversations on my mini-recorder, and then place them on my computer.  After that, I would delete them from the recorder in order to save memory on the recorder.  The recordings on my computer are identical to the ones that were on the actual recorder. . ." *Id.* at ¶ 8.  Defendant argues that it has no way of knowing whether there were any conversations that were deleted but not saved on Plaintiff's computer.

## D.     Retention of Netsmart Documents

As a result of the PCdotCom report, Defendant discovered that Plaintiff "improperly" had "hundreds" of Netsmart documents on his computer. DE 53 at 19.  These documents were permanently deleted from Plaintiff's computer by PCdotCom in January 2010.  DE 54, ¶ 12; DE 56, Ex. 2.  Defendant does not allege that these documents had any relevance in this litigation.


## III.   RULE 41(B)

Under Fed. R. Civ. P. 41(b), a district court may order an involuntary dismissal of a case "for failure of the plaintiff to prosecute or comply with these rules or any order of court."  Fed. R. Civ. P. 41(b); *see also Wills v. Constant*, No. 04-CV-4454, 2008 WL 314393, at *2 (E.D.N.Y. Feb. 4, 2008).  It is well settled that a dismissal under Rule 41(b) "operates as an adjudication on the merits and that such a dismissal is with prejudice." *Hoffman v. Wisner Classic Mfg. Co.*, 927 F.Supp. 67, 71 (E.D.N.Y.1996) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630-32, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).  Although the authority of a district court to dismiss a case under Rule 41(b) is an "important tool for preventing undue delays and avoiding docket congestion,"

*United States ex rel. Drake v. Norden Systems*, 375 F.3d 248, 251 (2d Cir.2004), involuntary

dismissal "is also one of the harshest sanctions at a trial court's disposal" and thus "it is reserved

for use only in the most extreme circumstances." *Id*.

Dismissal under Rule 41(b) involves consideration of five factors: (1) the duration of

plaintiff's failure to comply with court orders or failure to prosecute; (2) notice to plaintiff that

failure to comply or continued delay would result in dismissal; (3) possible prejudice to

defendants; (4) the balance between the interest of managing the court's docket and the plaintiff's

right to be heard; and (5) consideration of lesser sanctions. *See Shannon v. Gen. Elec. Co.*, 186

F.3d 186, 193-94 (2d Cir. 1999); *Dodson v. Runyon*, 86 F.3d 37, 40 (2d Cir. 1996); *Worytko v.*

*County of Suffolk*, No. 03-4767, 2009 WL 1228236, at *3 (E.D.N.Y. April 30, 2009); *Wills v.*

*Constant*, No. 04-4454, 2008 WL 314393, at *2 (E.D.N.Y. Feb. 4, 2009). No one of these

factors is dispositive. *See Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).

Regarding the first factor, Defendant alleges that the duration of Plaintiff's "offending

conduct is commensurate with the start of the case, and continu[ed] with regularity throughout

the entirety of the discovery period." DE 53 at 22. However, the Defendant does not point to a

Court Order with which the Plaintiff has failed to comply (except the Case Management and

Scheduling Order which sets the deadlines for various phases of the discovery period). Instead,

Plaintiff has participated in discovery and eventually provided the relevant documents, albeit late.

The Court notes that while Defendant's counsel first requested the newly discovered documents

on November 19, 2009, the documents were not delivered in their entirety until January 5, 2010,

three weeks after the close of discovery. Plaintiff's counsel has not provided a plausible reason

for the delay. However, despite this late production of documents, the Court does not find that

Plaintiff has repeatedly and consistently refused to comply with the Court's orders or failed to prosecute his case to such a degree that dismissal would be warranted. Thus, this first factor favors the Plaintiff.

Under the second factor, Plaintiff has never been put on notice by the Court that failure to comply with a particular order or failure to conduct discovery in a particular manner would result in dismissal. As such, this second factor favors the Plaintiff.

The third factor also weighs in favor of the Plaintiff. Defendant alleges that it was prejudiced by Plaintiff's conduct because "Defendant was required to spend their limited deposition time questioning Plaintiff on information regarding documents discovered on Plaintiff's home computer which had not been produced." DE 53 at 21. However, Defendant has not identified any information on which it wished to question Plaintiff but could not do so due to time restrictions. Furthermore, Defendant never asked this Court for additional time to depose the Plaintiff. Defendant further claims it was prejudiced because it was "impossible to sift through in any great detail" the material that was belatedly produced and that Defendant "incurred substantial and unnecessary legal costs as a result." *Id.* However, Defendant never moved this Court for an extension of the discovery deadline or for an extension of the summary judgment deadline, or for reimbursement of any costs it believed were due solely to Plaintiff's conduct.[4] Even when Plaintiff produced documents after Defendant had served its summary

_____

[4] Defendant argues that it should not have been required to file a motion to compel or seek other relief from this Court, and that its failure to do so should not weigh against it on this motion. Defendant states that such a requirement would "encourage other litigants to delay compliance with the federal procedural rules until a motion is made to force the litigant to play by the rules." DE 57 at 10. The Court finds Defendant's argument unpersuasive. Courts in the Second Circuit have repeatedly held that a "strong public policy favors resolving disputes on the merits." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001). Furthermore, "it is always preferable for issues to be adjudicated on the merits, rather than pursuant to discovery

judgment motion, Defendant did not seek to adjust the briefing schedule, or petition the Court for

relief. Presumably, Defendant was able to address the newly produced documents in its

summary judgment reply, if necessary. Finally, all documents have been produced to Defendant

and Defendant does not allege that there may be unique information in the destroyed documents

which would have been useful to its defense. Given these circumstances, there is no reason for

this Court to conclude that Defendant has suffered the type of prejudice which would warrant

dismissal of the Complaint.

Turning to the fourth factor, the Court does not find that Plaintiff's conduct has had a

palpable effect on docket congestion. All discovery in this case has been completed. No trial

date has been set – in fact, this case has not yet been certified as trial ready. Thus, the

continuation of this case through summary judgment, and potentially trial, should not cause a

significant burden on the Court's calendar.

Finally, the Court must consider whether other, lesser sanctions would be more

appropriate to remedy the situation. As discussed *infra*, this Court finds that it is appropriate to

impose sanctions on Plaintiff and his attorney in the form of reimbursing Defendant for costs and

attorney's fees incurred relating to Plaintiff's delay in production of documents. This sanction is

---

sanctions." *Black v. Bowes,* No. 05-CV-108, 2006 WL 3771097, at *7 (S.D.N.Y. Dec. 21, 2006).
As such, this Court finds that defendants have equivalent obligations to monitor discovery and
move a case forward while engaging in Local Civil Rule 37.3 obligations. When the outcome is
unsuccessful, then both sides have a duty to bring a discovery dispute to the Court for resolution
so that the progress of discovery is not impeded – a point emphasized by this Court at the Initial
Conference on May 19, 2009, and again in the Civil Conference Minute Order of that day. *See*
DE 16. Such procedure is preferable to allowing perceived acts of misconduct to "pile up" and
then seeking dismissal as a sanction. *See Wills v. Constant*, No. 04-CV-4454, 2008 WL 314393,
at *2 (E.D.N.Y. Feb. 4, 2008) ("involuntary dismissal is also one of the harshest sanctions at a
trial court's disposal and thus it is reserved for use only in the most extreme circumstances")
(internal quotations omitted).

sufficient to deter both Plaintiff and his counsel from any further discovery delays or oversights.

Accordingly, because sanctions other than dismissal are appropriate, the fifth factor favors the

Plaintiff.

Having considered all of the arguments of counsel and the applicable case law, and for

the reasons set forth above, I do not find that this case is one which mandates the extreme remedy

of dismissal under Rule 41(b).

## IV.  RULE 37(B) AND THE COURT'S INHERENT POWER

A federal district court may impose sanctions under Fed. R. Civ. P. 37(b) when a party

violates a court order.  *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.

1999).  "Even in the absence of a discovery order, a court may impose sanctions on a party for

misconduct in discovery under its inherent power to manage its own affairs."  *Residential*

*Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002).   Where the alleged

misconduct is the non-production of relevant documents, district courts have broad discretion in

fashioning an appropriate sanction.  *See Creative Resources Group of New Jersey v. Creative*

*Resources Group, Inc.*, 212 F.R.D. 94, 102 (E.D.N.Y. 2002).  The Court's inherent power

includes the authority to impose sanctions for the spoliation of evidence.  *See Barsoum v. NYC*

*Housing Authority*, 202 F.R.D. 396, 399 (S.D.N.Y. 2001).   "Spoliation is the destruction or

significant alteration of evidence, or the failure to preserve property for another's use as evidence

in pending or reasonably foreseeable litigation."  *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185,

194 (S.D.N.Y. 2007) (internal quotations omitted).

A party seeking sanctions for spoliation or for failure to produce documents in a timely

fashion must show:  (1) that the party having control over the evidence had an obligation to

preserve it at the time it was destroyed or had and obligation to timely produce it; (2) that the records were destroyed or not produced with a "culpable state of mind"; and (3) that the destroyed or not produced evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Residential Funding Corp.*, 306 F.3d at 107. "A party seeking sanctions for spoliation has the burden of proving that the alleged spoliator had an obligation to preserve evidence, acted culpably in destroying it, and that the evidence would have been relevant to the aggrieved party's case." *Ramirez v. Pride Dev. & Constr.,* 244 F.R.D. 162, 164 (E.D.N.Y. 2007). "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). "Outright dismissal of a lawsuit . . . is within the court's discretion" and "is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party. However, because dismissal is a drastic remedy, it should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." *West,* 167 F.3d at 779 (internal quotations omitted).

Plaintiff concedes that he had control of the evidence and a duty to preserve it at the time it was lost, destroyed, or not produced. DE 55 at 6-7. Plaintiff also concedes that the documents in question may have been relevant to the pending litigation. *Id.* at 7. Thus, the only remaining question for this Court to consider is whether Plaintiff possessed a culpable state of mind.

"The culpable state of mind requirement is satisfied in this circuit by a showing of ordinary negligence." *In re NTL, Inc. Securities Litig.,* 244 F.R.D. 179, 198 (S.D.N.Y. 2007). "The preservation obligation runs first to counsel, who has a duty to advise his client of the type

of information potentially relevant to the lawsuit and of the necessity in preventing its destruction." *Chan v. Triple 8 Palace, Inc.*, 205 WL 1925579, at *6 (S.D.N.Y. Aug. 11, 2005) (internal quotations omitted). "While, of course, it is true that counsel need not supervise every step of the document production process and may rely on their clients in some respects, counsel is responsible for coordinating her client's discovery efforts . . . both in terms of [the client's] duty to locate relevant information and [the client's] duty to preserve and timely produce that information." *Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 436 (S.D.N.Y. 2004) ("Zubulake V*"*) (internal quotations omitted). However, at the end of the day, the duty to preserve and produce documents rests on the party. *Id.*

Defendant argues that Plaintiff's culpable state of mind is evident in the fact that he repeatedly and "intentionally" withheld and destroyed documents.[5] DE 53 at 21. Plaintiff states in his affidavit that he never intentionally withheld documents, but either did not know they existed or did not know they were relevant to the litigation. Plaintiff further states that when he destroyed certain handwritten notes or audio recordings it was only after the information contained therein had been transferred to another source, and he did not know such a practice was improper.

---

[5]     Defendant further states that Plaintiff never "voluntarily corrected any misconduct" and "refused" to produce documents sought by the subpoena. DE 53 at 21. However, these allegations are refuted by an examination of the record. The record shows that Plaintiff supplemented his production of documents at least twice without any request by Defendant. *See* DE 52, Exh. 24; DE 57 at 3. Furthermore, there is no evidence that Plaintiff "refused" to turn over documents to Defendant. First, while Plaintiff initially resisted the copying of his entire hard-drive due to privacy concerns, he ultimately complied once appropriate safeguards were put in place. Second, Plaintiff's counsel may have delayed in producing the documents requested from the PCdotCom report, however Plaintiff never refused to produce the documents.

Having considered all of the facts, I find that Plaintiff and/or his counsel acted in a manner that meets the "ordinary negligence" standard. As such, Plaintiff is considered to have had a culpable state of mind, and sanctions are appropriate. There is no dispute that Plaintiff failed to produce relevant documents in a timely manner and that he failed to preserve all relevant documents and recordings. While it is impossible to know precisely why these events occurred, there was clearly a breakdown in communication between Plaintiff and his counsel regarding document preservation and collection. Plaintiff's counsel does not explain what efforts he employed to advise and gather documents from his client. Defendant, who has the burden of proof here, does not allege specific deficiencies in the methods of Plaintiff's counsel, other than the destruction itself or the failures to produce. Yet, the amount of information located after the document production had been substantially completed – some of which information was discovered only through Defendant's efforts – shows that something was amiss in Plaintiff's document production efforts. However, the relevant documents have now been produced, and there is no evidence that any unique evidence was lost.

Given these facts, this Court must now consider the appropriate sanction for Plaintiff's conduct. "A major consideration in choosing an appropriate sanction – along with punishing [the wrongdoer] and deterring future misconduct – is to restore [the movant] to the position that she would have been in had [the wrongdoer] faithfully discharged its discovery obligations." *Zubulake V*, 229 F.R.D. at 437. Based on the evidence before me, I do not find that the misconduct which occurred here was so extreme as to warrant dismissal of the case, especially given that, as noted above, Defendant has failed to show any prejudice. A less drastic sanction might be to allow an adverse inference instruction based on the documents which were destroyed

or to prohibit Plaintiff from introducing evidence based on the destroyed documents. *See*

*Zubulake V*, 229 F.R.D. at 437. However, Defendant did not request an adverse inference

instruction or evidence preclusion in its moving papers. Defendant's counsel did raise these

possible sanctions in his oral argument, but did not state precisely what information may have

been contained in the destroyed documents or audio recordings that would have been useful to

Defendant's case or to Plaintiff's case. As such, it is impossible for the Court to construct an

appropriate adverse inference instruction at this time or to determine if certain evidence should

be precluded from being introduced by Plaintiff. Furthermore, I do not find that Plaintiff's

conduct has been so extreme as to warrant an adverse inference instruction. *See Cedar*

*Petrochemicals, Inc. V. Dongbu Hannong Chemical Co.*, No. 06-CV-3972, 2011 WL 182056, at

*17 (S.D.N.Y. Jan. 14, 2011) ("If there is no or nominal prejudice, the likelihood of an adverse

inference instruction becomes nil and lesser sanctions should be considered."); *Treppel v. Biovail*

*Corp.*, 249 F.R.D. 111, 121 (S.D.N.Y.2008) ("an adverse inference instruction is an extreme

sanction and should not be imposed lightly").

Based on all of the circumstances and information presented by both sides, the Court

believes that monetary sanctions are appropriate. *See Zubulake V*, 229 F.R.D. at 437 (awarding

fees and costs to plaintiff where defendant failed to produce documents in a timely manner and

failed to preserve all relevant documents). Because many relevant documents were only

produced after Defendant had undergone substantial efforts to obtain them, the Court finds it

appropriate for Plaintiff and/or his counsel to reimburse Defendant for those expenses.[6] Thus, I

---

[6] The Court finds Rule 37(a) somewhat analogous in this regard. Had defendant moved to compel in the first instance, the Court would have granted the motion based on the circumstances brought to light here. As a consequence, under Rule 37(a), an incomplete disclosure must be treated as a failure to disclose, answer or respond, unless the conduct falls into one of three

respectfully recommend to Judge Platt that the following sanctions be imposed: (1) that

Defendant be awarded 50% of the costs and attorney's fees related to the PCdotCom analysis of

Plaintiff's computer, hard-drive and audio device; and (2) that Defendant be awarded the costs

and attorney's fees related to this motion.

Finally, after hearing the representations of Plaintiff's counsel at oral argument (*see*

Transcript of Oral Argument at 38-42, 44-55), it is not possible to know precisely whether the

omissions here occurred due to Plaintiff's failure to adequately produce documents or his

counsel's failure to sufficiently oversee the document retention and collection. Based upon my

review of the record, the position proffered at oral argument, and the applicable case law, I am

respectfully recommending that the costs and fees be paid 50% by Plaintiff and 50% by

Plaintiff's attorneys. *See Dodson v. Runyon*, 86 F.3d 37, 41 (2d Cir. 1996) ("Notably, instead of

dismissing the case, the court might have imposed financial penalties on the lawyer, the client, or

both.").


Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure,

the parties shall have fourteen (14) days from service of this Report and Recommendation to file

written objections. *See also* Fed.R.Civ.P. 6(a) and (e). Such objections shall be filed with the

Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers

exceptions not applicable here. *See* Rule 37(a)(5). A court is required to give the non-responsive
party an opportunity to be heard. If the motion to compel is granted, Rule 37 requires the party
whose conduct necessitated the motion to pay the movant's reasonable expenses incurred in
making the motion, including attorney's fees. Rule 37(b)(5). *See Miller v. Midpoint Resolution
Group LLC*, No. CV-08-3791, 2009 WL 2001329, at *1 (E.D.N.Y. July 7,2009) (as a result of
defendants' continued failure to comply with discovery obligations, defendants and their counsel
held jointly and severally liable under Rule 37(a)(5) for plaintiff's reasonable expenses, including
attorney's fees).

of the Honorable Thomas C. Platt, and to the chambers of the undersigned.  Any requests for an

extension of time for filing objections must be directed to Judge Platt prior to the expiration of

the fourteen (14) day period for filing objections.  Failure to file objections will result in a waiver

of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88

L.Ed.2d 435 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), cert. denied, 522 U.S. 883,

118 S.Ct. 211, 139 L.Ed.2d 147 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir.1996).


                                        **SO ORDERED.**


Dated:  Central Islip, New York
        February 28, 2011

                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        U.S. Magistrate Judge